UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| **Crescent Mortgage Company,** | Civil No. 6:20-159-KKC-HAI |
| Plaintiff, | |
| v. | **OPINION AND ORDER** |
| **Brien Freeman and Freeman & Childers, LLP,** | |
| Defendants. | |

** ** ** ** **

This matter is before the Court on motions for summary judgment filed by Plaintiff Crescent Mortgage Company [DE 41] and Defendants Brien Freeman and Freeman & Childers, LLP [DE 40]. The parties have responded and replied to each motion, and the matter is ripe for the Court's review. For the reasons set forth below, Plaintiff Crescent Mortgage Company's motion will be granted in part and denied in part, and Defendants' motion will be denied.

## BACKGROUND

In April 2013, on behalf of its investor Crescent Mortgage Company, Whitaker Bank agreed to loan $114,000 to Mac and Cindy Whitaker to refinance their residential loan for property located at 126 Casey Road, Corbin, Kentucky.

Whitaker Bank retained the law firm of Freeman & Childers to conduct a title examination and prepare a title report for the Whitakers'

– 1 –

property at 126 Casey Road. Although Whitaker Bank's Title Order form did not specify the deed book or page at which the deed for the property was recorded, the address was clearly included on the form.

The Defendants did not run a title search for the property in response to Whitaker Bank's April 2013 Title Order. Instead, they "updated" a title opinion that had been prepared in response to a title request that Whitaker Bank had sent with respect to a different loan on a different property five months earlier. In November 2012, Whitaker Bank had processed another loan for the Whitakers with respect to a different property, an 8.15-acre unimproved parcel. In connection with that November 2012 loan, the bank had submitted a Title Request to Freeman & Childers on November 11, 2012. The November 2012 Title Request requested a "Title Opinion on property in Whitley County per attached deed." The deed attached to the Title Request included the legal description of the 8.15-acre property and a reference to the deed book page and number.

When Freeman & Childers received the April 5, 2013 Title Order, it assumed it was for the same property as the November 2012 Title Request. The firm therefore simply "updated" its November 2012 title opinion and incorrectly incorporated the legal property description of the 8.15-acre parcel into the April 2013 Title Report.

Based on the Freeman & Childers title report prepared in April 2013, the bank and the Whitakers entered into a mortgage agreement, which contained the erroneous property description from the title report. Then, Crescent sold the loan to MMS Mortgage Services, who in turn sold it to Freddie Mac.

Later, the Whitakers defaulted on the loan regarding the 126 Casey Road property and MMS tried to initiate foreclosure on the property, only to learn that the mortgage did not encumber the 126 Casey Road property, but the 8.15-acre unimproved property, which was of substantially lesser value. Upon discovering the error, MMS sought relief from the title insurance company, which denied the claim because the 126 Casey Road property was not described in the title insurance policy. After that discovery, Freddie Mac demanded that MMS repurchase the mortgage because Freddie Mac does not purchase mortgages on unimproved property. Accordingly Crescent, through MMS, repurchased the loan for $99,380.97.

Defendants do not deny that they included the incorrect property description on their April 2013 title report. Instead, Defendants asserts that this action by Crescent is barred by the statute of limitations, that this Court does not have jurisdiction, and that any damages are speculative. Moreover, the law firm asserts that summary judgment is appropriate because Crescent has failed to prove legal malpractice through expert testimony. Crescent asserts that summary judgment is appropriate because it has proven its claim for legal malpractice and the material facts are not in dispute.

### ANALYSIS

## I.    Standard of Review

Although a federal court sitting in diversity applies state substantive law, it "uses the federal standard for summary judgment." *Tompkins v. Crown Corr, Inc.*, 726 F.3d 830, 837 n.4 (6th Cir. 2013). Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). A party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion with particularity. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party opposing the motion must then make an affirmative showing of a genuine dispute in order to defeat the motion. *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). To do so, the non-moving party must direct the Court's attention "to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001).

"At the summary-judgment stage, we view the facts in the light most favorable to the nonmoving party (usually by adopting the plaintiff's version of the facts) only if there is a genuine dispute as to those facts." *EEOC v. Ford Motor Co.*, 782 F.3d 753, 760 (6th Cir. 2015) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)) (cleaned up). "[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). "Mere speculation will not suffice to defeat a motion for summary judgment: '[T]he mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate.'" *Powell v. Cherokee Ins. Co.*, 919 F. Supp. 2d 873, 877 (W.D. Ky. 2013) (quoting *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996), *abrogated on other grounds by Lewis v. Humboldt Acquisition Corp., Inc.*, 681 F.3d 312 (6th Cir. 2012)). "A 'genuine' dispute exists when the plaintiff presents 'significant probative

evidence' 'on which a reasonable jury could return a verdict for her.'" *Ford Motor Co.*, 782 F.3d at 760 (quoting *Chappell v. City of Cleveland*, 585 F.3d 901, 913 (6th Cir. 2009)).

## II.    Defendants' Motion for Summary Judgment

### A.    Statute of Limitations

Kentucky law has established a one-year statute of limitations for professional negligence claims, including legal malpractice:

> Notwithstanding any other prescribed limitation of actions which might otherwise appear applicable . . . a civil action, whether brought in tort or contract, arising out of any act or omission in rendering, or failing to render, professional services for others shall be brought within one (1) year from the date of the occurrence or from the date when the cause of action was, or reasonably should have been, discovered by the party injured.

Ky. Rev. Stat. Ann. § 413.245.

Here, the parties agree that a one year statute of limitations applies, but they disagree on when Crescent's claim accrued—that is, the date on which the statute began to run. Defendants argue that the claim accrued, and therefore the statute began to run, "when [mortgage] documents were signed, recorded and received by" Crescent in 2013. [DE 40-1 at 15.] Crescent argues that its claim did not accrue until January 2020, when its injuries became non-speculative by virtue of Freddie Mac demanding MMS repurchase the mortgage, which triggered Crescent's contractual obligations to repurchase the loan.

The Kentucky Supreme Court has held that that the statute of limitations in Ky. Rev. Stat. § 413.245 establishes "two separate statutes of limitations": (1) the "occurrence" limitation and (2) the "discovery" limitation. *Michels v. Sklavos*, 869 S.W.2d 728, 730 (Ky. 1994). "The 'occurrence'

limitation period begins to run upon the accrual of the cause of action." *Queensway Fin. Holdings Ltd v. Cotton & Allen, P.S.C.*, 237 S.W.3d 141, 147 (Ky. 2007). The "accrual rule is relatively simple: A cause of action is deemed to accrue in Kentucky where negligence and damages have both occurred." *Id.* (quoting *Sklavos*, 869 S.W.2d at 730) (cleaned up). "The use of the word 'occurrence'" in § 413.245 "indicates a legislative policy that there should be some definable, readily ascertainable event which triggers the statute." *Id.* (citing *Sklavos*, 869 S.W.2d at 730). And the "so-called 'triggering event' is 'the date of irrevocable non-speculative injury.'" *Saalwaechter v. Carroll*, 525 S.W.3d 100, 105 (Ky. Ct. App. 2017) (quoting *Doe v. Golden & Walters, PLLC*, 173 S.W.3d 260, 271 (Ky. Ct. App. 2005)). Put simply, the "statute of limitations for legal malpractice does not begin to run until the legal harm becomes fixed and non-speculative." *Doe*, 173 S.W.3d at 271 (cleaned up).

The "discovery" limitation period, on the other hand, "begins to run when the cause of action was discovered or, in the exercise of reasonable diligence, should have been discovered." *Queensway*, 237 S.W.3d at 147 (citing *Sklavos*, 869 S.W.2d at 730). The discovery provision is only applicable if the complaint was filed more than one year after the date of the "occurrence." *Id.* at 148. In that regard, the discovery provision "often functions as a 'savings' clause or 'second bite at the apple' for tolling purposes." *Saalwaechter*, 525 S.W.3d at 105 (quoting *Queensway*, 237 S.W.3d at 148).

"Where a plaintiff claims that its suit was filed within the limitations period under both the accrual and discovery rules, as Crescent does here, the Court must evaluate the timeliness of the claim "separately under both the

accrual and discovery rules." *Queensway*, 237 S.W.3d at 148. Accordingly, the Court's analysis will begin with the occurrence rule, and then, if necessary, turn toward the discovery rule.

### 1. Occurrence

Legal malpractice has not occurred—and such a claim does not accrue—"until there has been a negligent act and reasonably ascertainable damages are incurred." *Pedigo v. Breen*, 169 S.W.3d 831, 833 (Ky. 2004). The Defendants' allegedly negligent acts occurred in 2013, when they prepared the title opinion, mortgage, and other documents related to Whitaker Bank's loan to the Whitakers. "But under the [legal] malpractice statute of limitations, mere knowledge of some elements of a tort claim, such as negligence without harm, is insufficient to begin running the limitations period where the cause of action does not yet exist." *Queensway*, 237 S.W.3d at 148 (citing *Sklavos*, 569 S.W.2d at 731–32). "The question becomes, then, when did [Crescent's] damages become fixed and non-speculative?" *EQT Prod. Co. v. Vorys, Sater, Seymour & Pease, LLP*, No. 15-146-DLB-EBA, 2018 WL 1996797, 2018 U.S. Dist. LEXIS 72687, at *23 (E.D. Ky. Apr. 27, 2018).

Crescent's legal malpractice claim is not based on "litigation negligence," but rather based on "legal work that was not part of formal litigation"—in other words, transactional or drafting negligence. *Faris v. Stone*, 103 S.W.3d 1, 5 (Ky. 2003). In a transactional negligence case, "the critical factor that delays accrual [is] the existence of ongoing negotiation or litigation, the outcome of which determines whether the plaintiff was injured by the alleged malpractice." *EQT Prod. Co.*, 2018 U.S. Dist. LEXIS 72687, at *30. A plaintiff's injury can be irrevocable and non-speculative "even if [the

plaintiff] may not have known the full extent of his damages in terms of the precise dollar amount." *Saalwaechter*, 525 S.W.3d at 107. What matters is that the "plaintiff is certain that damages will indeed flow from defendant's negligent act," not that the exact amount of damages is certain. *Id.* at 106 (quoting *Bd. of Educ. of Estill Cnty. v. Zurich Ins. Co.*, 180 F. Supp. 2d 890 (E.D. Ky. 2002)).

*Meade County Bank v. Wheatley* is instructive on this point. 910 S.W.2d 233 (Ky. 1995). In *Meade County Bank*, the Kentucky Supreme Court determined that the attorney's allegedly negligent title opinion, which failed to disclose a prior recorded mortgage, did not give rise to a fixed and non-speculative injury until the foreclosure sale because "[p]rior to that date, [the Bank] had only a fear that they would suffer a loss on the property" and "[t]hat fear was not realized as damages until the sale of the property." *Id.* at 235.

In this case, Crescent's injury did not become fixed and non-speculative until January 2020, when Freddie Mac demanded MMS repurchase the mortgage and Crescent's contractual obligation to MMS was triggered. Prior to that point, Crescent at best "had only a fear" it would suffer a loss, and "[t]hat fear was not realized as damages" until it became contractually obligated to repurchase the mortgage from Freddie Mac. Crescent could not be "certain that damages would indeed flow from defendant's negligent act" until Freddie Mac made that demand. *Saalwaechter*, 525 S.W.3d at 106.

Defendants' argument that Crescent's injury became fixed and non-speculative in April 2013 is unconvincing. Even if the Court were to accept Defendants' contention that Crescent knew or should have known the

– 8 –

property description was incorrect at that time, damages were still not certain to flow from the error. For example, the Whitakers could have paid the mortgage or made improvements on the accidentally encumbered 8.15-acre parcel and substantially increased its value, or they could have simply performed on the mortgage. After the Whitakers defaulted and MMS discovered the erroneous property description in the mortgage, damages were still not certain to flow to Crescent because title insurance could have covered MMS's claim. Until these other potential avenues of recourse failed, Crescent's damages were speculative. The "occurrence" that fixed those damages and point at which they became non-speculative was when Crescent's contractual obligation to repurchase the mortgage was triggered. At that point, it was reasonably clear that Crescent would suffer some loss because of the Defendant's alleged negligence.

Kentucky's one-year statute of limitations did not begin to run until its damages became fixed and non-speculative on January 16, 2020, when Freddie Mac demanded the mortgage be repurchased, and Crescent's contractual obligations to repurchase the mortgage were triggered. Crescent filed this lawsuit on July 28, 2020, just over six months after the statute began to run. Thus, the lawsuit is timely as it was filed well within the one-year limit set by Kentucky law. The Court will therefore deny Defendants' request for summary judgment as to the statute of limitations.

### B.    Amount in Controversy/Mitigation of Damages

Defendants argue that Court does not have subject matter jurisdiction over the action because Crescent had a duty to mitigate its damages, and had it done so, the amount in controversy would not exceed $75,000 as required

by 28 U.S.C. § 1332(a). Crescent argues that the affirmative defense of failure to mitigate does not relate to the amount in controversy requirement, and that the amount in controversy is the $91,931.30 in damages that Crescent seeks to recover from Defendants.[1]

Diversity jurisdiction requires two elements: complete diversity of the parties and an amount in controversy exceeding $75,000. 28 U.S.C. § 1332. As the party invoking federal diversity jurisdiction, Crescent has to the burden of demonstrating by competent proof that both the complete diversity and amount in controversy requirements are met. *Cleveland Hous. Renewal Project v. Deutsche Bank Tr. Co.*, 621 F.3d 554, 559 (6th Cir. 2010). Since the parties do not contest whether the complete diversity requirement is satisfied, the Court will only address the amount in controversy.

Crescent claims the amount in controversy is $91,931.30—the amount of money it paid to repurchase the mortgage. Unless the plaintiff seeks unspecified damages, "the sum claimed by the plaintiff controls" the amount in controversy. *Everett v. Verizon Wireless, Inc.*, 460 F.3d 818, 822 (6th Cir. 2006). Because a "fair reading" of the damages specified in the complaint and other evidence in the record shows that the amount in controversy exceeds $75,000, Crescent has met its burden to prove the amount in controversy by a preponderance of the evidence. *Shaffer v. Brink's U.S.*, No. 2:10-cv-331,

---

[1] In its complaint, Crescent claims damages of $99,380.97 [DE 1 at 5.] However, in its response to Defendants' motion for summary judgment, Crescent claims the amount in controversy is a different amount—$91,931.30. [DE 42 at 8.] This appears to be based on an "affidavit of indebtedness" cited in the Defendants' motion, which they claim shows the remaining debt on the loan at the time Crescent repurchased it was $91,931.30. [DE 40-1 at 16.] However, whether the amount in controversy is $99,380.97 as claimed in the complaint or $91,931.30 is immaterial to this analysis, as the jurisdictional requirement is satisfied regardless.

2010 U.S. Dist. LEXIS 55849, at *4 (S.D. Ohio June 8, 2010) (citing *Hayes v. Equitable Energy Resources Co.*, 266 F.3d 560, 573 (6th Cir. 2001)).

If a plaintiff demands more than the jurisdictional amount, the complaint should not be dismissed for lack of jurisdiction "unless it appears to a legal certainty that plaintiff cannot recover the jurisdictional amount." *Pro-Onsite Techs., LLC v. Jefferson Cnty.*, No. 3:04CV-452-R, 2005 U.S. Dist. LEXIS 17920, at *4 (W.D. Ky. Aug. 19, 2005) (quoting *Tullos v. Corley*, 337 F.2d 884, 887-88 (6th Cir. 1964)). Crescent has met its burden to show the amount in controversy here exceed $75,000, and the burden therefore shifts to Defendants to show to a legal certainty that it cannot recover that amount.

Defendants have failed to meet that burden. They argue that because Crescent is able to mitigate its damages by selling the 8.15-acre parcel for around $40,000, Crescent would only be able to recover between $51,000 and $59,000 in this action. [DE 40-1 at 16.]

In Kentucky, failure to mitigate is an affirmative defense. *See Carney v. Scott*, 325 S.W.2d 343, 345 (Ky. 1959); *see also December Farm Int'l v. December Estate*, Nos. 2019-CA-0983-MR, 2019-CA-1057-MR, 2021 Ky. App. Unpub. LEXIS 294, at *20 (Ct. App. May 7, 2021). "Because potential affirmative defenses are not considered in determining the amount in controversy," Crescent's mitigation of damages, or failure to mitigate, does not alter the amount in controversy. *Anderson v. Mid-Continent Aircraft Corp.*, No. 14-2888, 2015 U.S. Dist. LEXIS 188844, at *6–7 (W.D. Tenn. Apr. 6, 2015) (citing *Compass Grp. USA, Inc. v. Eaton Rapids Pub. Sch.*, 349 F. App'x 33, 35 (6th Cir. 2009)).

Accordingly, the Court will deny Defendants' summary judgment as to the amount in controversy.

## IV.    Crescent's Motion for Summary Judgment

### A.    Legal Malpractice

In its motion, Crescent claims it is entitled to summary judgment on its claim against Defendants for legal malpractice. Under Kentucky law, a claim of legal malpractice requires a plaintiff to prove (1) that there was an employment relationship with the defendant; (2) the attorney failed to exercise the care of a reasonably competent attorney acting in the same or similar circumstances; and (3) the defendant's negligence was the proximate cause of damage to the plaintiff. *Gleason v. Nicholas Nighswander, PLLC*, 480 S.W.3d 926, 929 (Ky. Ct. App. 2016).

The Defendants do not dispute that they had an attorney-client relationship with Crescent, nor that they owed Crescent a duty. Therefore, to be entitled to summary judgment, Crescent must first show that there is no genuine issue of material fact as to breach and causation. "[B]reach and injury" present "questions of fact." *Id.* (citing *Lewis v. B & R Corp.*, 56 S.W.3d 432, 438 (Ky. Ct. App. 2001). And legal causation "presents a mixed question of law and fact." *Id.* (citing *Deutsch v. Shein*, 597 S.W.2d 141, 145 (Ky. 1980).

Defendants challenge the sufficiency of Crescent's evidence as to the applicable standard of care and argue that Crescent has offered no evidence as to the breach, causation, and damages elements.[2] The Court will therefore

---

[2] Though they assert that Crescent has "offered no competent proof of . . . breach, causation and damages," [DE 43 at 10–11], the arguments in Defendants' response only address the standard of care and breach, and do not explain how those arguments relate to causation or damages.

examine Crescent's evidence for each element, addressing the parties' arguments in turn.

### 1.    Breach

When an attorney-client relationship exists, Kentucky law imposes a high standard of care:

> The relationship is generally that of principal and agent; however, the attorney is vested with powers superior to those of any ordinary agent because of the attorney's quasi-judicial status as an officer of the court; thus the attorney is responsible for the administration of justice in the public interest, a higher duty than any ordinary agent owes his principal. Since the relationship of attorney-client is one fiduciary in nature, the attorney has the duty to exercise in all his relationships with this client-principal the most scrupulous honor, good faith and fidelity to his client's interest.

*Abbott v. Chesley*, 413 S.W.3d 589, 600 (Ky. 2013) (quoting *Daugherty v. Runner*, 581 S.W.2d 12, 16 (Ky. Ct. App. 1978)). Thus, "the standard of care is generally composed of two elements": care and skill. *Daugherty*, 581 S.W.2d at 16. "The first has to do with [the] care and diligence which the attorney must exercise." *Id.* "The second is concerned with the minimum degree of skill and knowledge which the attorney must display." *Id.*

"In determining whether that degree of care and skill exercised by the attorney in a given case meets the requirements of the standard of care aforementioned, the attorney's act, or failure to act, is judged by the degree of its departure from the quality of professional conduct customarily provided by members of the legal profession." *Id.* (cleaned up). Accordingly, an attorney's duty to his client is breached when "the attorney's act, or failure to act . . . depart[s] from the quality of professional conduct customarily provided by members of the legal profession" acting in the same or similar circumstances. *Id.*

Crescent alleges that Defendants were negligent in conducting the title examination and in preparing the mortgage and title report by including an erroneous property description in them. Defendants argue that Crescent has failed to create a genuine issue of material fact as to whether Defendants breached their duty because Crescent has not provided sufficient expert testimony.

The standard of care for an attorney in a legal malpractice claim is measured by the conduct customary in the profession under the circumstances, and expert testimony is typically, but not always, required to establish it. *Boland-Maloney Lumber Co. v. Burnett*, 302 S.W.3d 680, 686 (Ky. Ct. App. 2009). Expert testimony is not required in cases where the attorney's negligence "is so apparent that a layperson with general knowledge would have no difficulty recognizing it." *Stephens v. Denison*, 150 S.W.3d 80, 82 (Ky. Ct. App. 2004). Whether an expert witness is required to prove a legal malpractice claim is within the discretion of the trial court. *Gleason*, 480 S.W.3d at 929 (citing *Blankenship v. Collier*, 302 S.W.3d 665, 673 (Ky. 2010)).

In a recent legal malpractice case in this district, Judge David L. Bunning aptly explained how Kentucky courts have determined whether expert testimony might be required:

> Kentucky courts have held that expert testimony is not necessary in cases where a statute of limitations was missed, a plea offer was not conveyed, or where an attorney had a conflict of interest. By contrast, Kentucky courts have required expert testimony in cases concerning trial preparation, trial strategy, qualified domestic relations orders, and an attorney's professional assessment of the law. Thus, the necessity of expert testimony is dictated by the nature of the alleged malpractice. If the alleged negligence involves the exercise of legal judgment or the application of complex legal principles, expert testimony is required.

*EQT Prod. Co. v. Vorys, Sater, Seymour & Pease, LLP*, No. 15-146-DLB-EBA, 2018 WL 1996797, 2018 U.S. Dist. LEXIS 72687, at *46 (E.D. Ky. Apr. 27, 2018) (cleaned up).

Here, the alleged negligence involves the accuracy of information that Defendants provided to their client. The material facts are not in dispute: Defendants were retained to conduct a title examination, and to prepare the mortgage, note, and a title report. Defendant Freeman prepared a title report that contained the wrong property description. [DE 1 at ¶ 12–13; DE 8 at 1.] Whitaker Bank asked for a report on property located at "126 Casey Road[,] Corbin, KY 40701." [DE 1-4 at 2.] Defendants provided a title report that included the legal description of another piece of unimproved property. That incorrect description was then used in the mortgage,[3] and when the Whitakers defaulted on that mortgage, Crescent was forced to repurchase the loan.

Expert testimony is not required to understand the negligence alleged here. "A layperson with general knowledge would have no difficulty recognizing" that "a reasonably prudent lawyer and law firm" would not provide the description of the wrong property in a title opinion. *Greene v. Frost Brown Todd, LLC*, No. 3:14-CV-00619-TBR, 2016 U.S. Dist. LEXIS 160898, at *17 (W.D. Ky. Nov. 21, 2016).

---

[3] In their briefs, Defendants argue that they did not prepare the mortgage, and that it was either Whitaker Bank or Crescent that inserted the incorrect property description into the mortgage. However, whether it was Defendants or some other party that inserted the erroneous property description is immaterial because it was the description from Defendants' title report. The property description in the mortgage is, indisputably, erroneous. Regardless of who copied the description from Defendants' title report and put it in the mortgage, the description was only erroneous because the Defendants provided a description of the wrong property in the title report.

Aside from stating that expert testimony is generally required to prove legal malpractice, Defendants do not address the issue of whether this case falls under the exception to that general rule. They merely cite *EQT Prod. Co.* in support of the proposition that "federal courts sitting in Kentucky, and the Sixth Circuit, have recently, and clearly, recognized the general rule requiring expert testimony to prove legal malpractice 'except where the negligence is so apparent that a lay person with general knowledge would have no difficulty recognizing it.'" [DE 43 at 11–12 (citing *EQT Prod. Co.*, 2018 U.S. Dist. LEXIS 72687.] Though *EQT Prod. Co.* has some similarity to the instant case, in that it also involved a legal malpractice claim based on allegedly negligent title examinations, it is materially distinguishable.

In *EQT Prod. Co.*, the alleged negligence involved "the extent and completeness of a title examination." 2018 U.S. Dist. LEXIS 72687, at *48. However, the title examination at issue in that case was much more complex than the residential title search requested by Crescent. The attorneys in *EQT* were asked to render title opinions of the "oil and gas estate" on multiple tracts of land, and the plaintiff alleged they were negligent in failing to examine a separate "working interest estate" as part of the title examinations. *Id.* at *47–50. The plaintiff argued that expert testimony was not required to support its legal malpractice claim because an ordinary layperson could recognize whether a title examination was negligently conducted, but Judge Bunning held otherwise:

> The question, therefore, is: Would a reasonably competent attorney, who is asked to provide an oil and gas title opinion, breach the standard of care by failing to examine the lessee title for the working interest estate? Were the Court to ask any layperson walking down the street this question, it would expect to receive puzzled looks in response. In fact, asking that question to an attorney—not well-versed in mineral rights and title examinations—

> would probably elicit an equally confused reaction. Put simply, such negligence is not "so apparent that a layperson with general knowledge would have no difficulty recognizing it." *Stephens*, 150 S.W.3d at 82. Given the various terms of art, the intricacies of mineral interests and estates, and the complexity of title examinations, expert testimony is required to prove the negligence [the plaintiff alleges].

*Id.* at *50–51.

Here, the operative question is much simpler: Would a reasonably competent attorney, who is asked to provide a title opinion for property at a specific address, breach the standard of care by providing the legal description of a different property in their title opinion? In contrast to *EQT Prod. Co.*, answering that question does not require exercise of legal judgment or application of complex legal principles. If the alleged negligence were more complicated, or if it involved the "extent and the completeness of a title examination," the issue may be "beyond the ordinary comprehension of a lay juror." *Id.* at *47. Or, if the alleged negligence were layered with terms of art and legal concepts unfamiliar to someone with no legal training, as was the case in *EQT Prod. Co.*, expert testimony might be necessary. But it is not.

Here, it is not necessary to understand extent or completeness of the title examination performed by Defendants—it is sufficient to understand that Defendants were retained to perform legal services that included obtaining and relaying to the client information that is available in a public record, and that Defendants gave their client the incorrect information. Recognizing the negligence in this case does not require an understanding of anything more than what happened, which a qualified fact witness could readily explain. Therefore, because the alleged negligence in this case is "so apparent that a layperson with general knowledge would have no difficulty

recognizing it," *Stephens*, 150 S.W.3d at 82, expert testimony is not required to prove it.

Although expert testimony is not necessary to support Crescent's legal malpractice claim, as the moving party, it still has "burden of showing an absence of evidence to support [Defendants'] case." *Garnet v. GMC*, 19 F. App'x 363, 365 (6th Cir. 2001) (citing *Covington v. Knox County School Sys.*, 205 F.3d 912, 914 (6th Cir. 2000)). Crescent argues that regardless of who put the erroneous property description in the mortgage instrument, Defendants bear ultimate responsibility for the accuracy of the mortgage document, and because the property description in the mortgage document was erroneous, Defendants breached their duty by failing to ascertain and provide an accurate description of the subject property. [DE 41 at 6–7.]

Here, Crescent has met its burden to show there is no genuine dispute of material fact as to whether Defendants breached their duty. There is no genuine dispute as to whether Defendants did, in fact, provide a description of the wrong property in their title report. Defendants' attempt to create a genuine dispute of that fact is unavailing. They point to the opinion of their expert, Darrell Saunders, who opined that Defendants "met or exceeded the standard of care of an ordinary and prudent lawyer" under the circumstances. [DE 43 at 14–15.] But even given a generous reading, Saunders's opinion fails to establish a standard of care for these particular circumstances. In support of his conclusion, Saunders states that "[i]t is not a part of the standard of care of an attorney to decide what property the lender chooses to accept as collateral." [DE 43 at 16.] He further opines that "[i]t is standard practice" that once the lender has decided the property to serve as collateral to support

the loan, the lender "orders a title search done on property with a specific deed book and page number to search." [DE 43 at 15.] Then, "once the bank provides the description to be searched, the attorney searches the title and provides a title opinion confirming the source of title (deed book, page number) that was searched." [DE 43-9 at 3.]

Saunders's description of standard practice might be sufficient evidence to establish the standard of care under the circumstances he describes, but the circumstances of this case are materially different. He states that it is "customary and standard that the lender provide a property description and deed book and page number to counsel" when asking for a title opinion, [DE 43-9 at 3], but the parties agree that Whitaker Bank did not include that information in its title order and only identified the property by its address at 126 Casey Road, Corbin, Kentucky. Saunders's opinion only states what is standard practice when the lender provides a deed book and page number. So, even if it is "customary and standard" for a lender to do so, the parties agree the lender here did something different. Which begs the question: what should the *Defendants* have done when they did not receive a deed book and page number? Saunders's opinion does not answer that question or provide a basis for a jury to do so—it offers no evidence as to what the standard of care was in this case or whether Defendants breached that standard of care.

Even going a step further and assuming Saunders's opinion somehow could be evidence of the applicable standard of care in this case, the Defendants have still failed to articulate how they did not breach that standard. It is undisputed that on April 5, 2013, Whitaker Bank requested a

title search on property owned by Mac and Cindy Whitaker located at 126 Casey Road, Corbin, Kentucky. According to the standard practice described by Saunders, "once the bank provides the description to be searched *the attorney searches the title*, and provides a title opinion *confirming the source of title* (deed book, page number) that was searched." [DE 43-9 at 3 (cleaned up) (emphasis added).] The title order received by Defendants unambiguously provides the description to be searched as 126 Casey Road, Corbin, Kentucky—no other property is referenced. There is no evidence that Defendants searched or confirmed the source of the title for 126 Casey Road, which is the only property described in the title order. To the contrary, the undisputed evidence in the record shows that Defendants never performed a title search for property at 126 Casey Road, and that they confirmed the deed book and page number for another property—the unimproved 8.15-acre parcel. Thus, even given the most generous reading in the light most favorable to Defendants, not only is Saunders's opinion not evidence that Defendants met the applicable standard of care, but it is also actually evidence that they breached it.

The gravamen of Defendants' argument seems to be that because the lender did not spoon feed the standard information in their title order, it was reasonable for Defendants to assume the property to be searched was the same property that had been searched five months earlier, because the Whitakers' name and address appeared somewhere on both documents. Again, even accepting Defendants' evidence as true and granting them every favorable inference, their argument fails. Saunders's opinion does not provide a basis to conclude Defendant's assumption was reasonable, because again, it

only discusses what should be done when the lender provides a deed book reference in the title order. It does not state what an attorney should do or typically does if no deed book reference is provided. If anything, Saunders's deposition testimony suggests that Defendants *should not* have made any assumption and should have asked for clarification as to what property was to be searched. Saunders "testified expressly that when a lender asks him to do a title search that '[he] wants a copy of the deed.'" [DE 40-1 at 14.] From that it is reasonable to infer that an attorney should obtain a copy of the deed from the lender before running the title search. But it is not reasonable to infer that in the absence of a deed book reference, an ordinary and prudent lawyer would assume the title to be searched is the same as a previously searched title simply because the same address appeared *somewhere* in both title orders.

In sum, Crescent has met its burden and identified evidence that "demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The evidence in the record shows that Whitaker Bank requested a title opinion from Defendants for property at 126 Casey Road, Corbin, Kentucky. The Defendants did not run a title search for 126 Casey Road and provided the bank with a title opinion that included the legal description of a different property. That erroneous property description was then incorporated into the mortgage instrument and title insurance policy. Defendants have failed to identify any evidence that would create a genuine dispute of those material facts. The only evidence Defendants' set forth is the expert opinion of Darrell Saunders, but that opinion offers no basis for the conclusion that Defendants did not breach their duty by failing

to run a title search and providing an erroneous property description in a title. Defendants have therefore failed to put forth evidence to create a genuine issue of material fact as to whether they breached their duty to Crescent. Accordingly, the Court will grant partial summary judgment in favor of Crescent as to the issue of breach on their claim for legal malpractice.

### 2.      *Causation*

To be granted summary judgment on its legal malpractice claim, Crescent must demonstrate that there is no genuine issue of material fact regarding causation. Crescent must show that Defendants' alleged negligence was the proximate cause of its damages. *Marrs v. Kelly*, 95 S.W.3d 856, 860 (Ky. 2003). To prove proximate cause, Crescent must show that "but for the attorney's negligence," Crescent would have "fared better" and "would have been more likely successful." *Id.* "[W]hat *would have* happened without [Defendants'] alleged negligence" is "the very nature of 'but for' causation," and in cases involving drafting negligence, proximate cause can be proved with evidence that "absent the drafting error, the plaintiff would not have been damaged." *EQT Prod. Co.*, 2018 U.S. Dist. LEXIS 72687, at *59–60. Thus, to prove proximate cause, Crescent must show that if Defendants had not included an erroneous property description in their title report, Crescent would not have been required to repurchase the defaulted loan.

Crescent's argument is straightforward and based on facts stated in the declaration of its Vice President/Credit Risk Manager Rusty Creel [DE 41-3]. After the Whitakers defaulted on the loan, MMS began the foreclosure process, but discovered that the mortgage encumbered the 8.15-acre unimproved and substantially less valuable parcel, rather than the 126 Casey

Road property. MMS then filed a title insurance claim that was denied on the basis that the insurance only covered the property described in the property description of the title insurance policy, which included the erroneous property description from Defendants' title report. After the title insurance claim was denied, Crescent was required to repurchase the mortgage due to its contractual obligations with MMS. Thus, Crescent argues that but for Defendants providing the erroneous property description in their title opinion: (1) MMS would have been able to foreclose on the loan and extinguish the mortgage, and Crescent would never have had to repurchase the loan, or that (2) even if foreclosure was unavailable or untenable, MMS's title insurance claim would not have been denied and Crescent's contractual obligations requiring it to repurchase the mortgage would not have been triggered.

Defendants, on the other hand, have not set forth any argument regarding proximate cause. In their response to Crescent's motion for summary judgment, Defendants assert that Crescent has "offered no competent proof of . . . breach, causation, and damages" and that Crescent's alleged "deficiencies are discussed below." [DE 43 at 10–11.] However, an examination of Defendants' brief reveals no such discussion of proximate cause.

To the extent that Defendants intend their argument regarding expert testimony and breach to also apply to causation, that argument fails for the same reasons as discussed above. Here, understanding the causal connection between the alleged malpractice and the alleged injury does not require "exercise of legal judgment" or "application of complex legal principles." *EQT*

*Prod. Co.*, 2018 U.S. Dist. LEXIS 72687, at *46. A layperson with general knowledge would have no difficulty recognizing that but for Defendants including an erroneous property description in the title opinion, it is more likely than not that Crescent would not have had to repurchase the loan.

Defendants' failure to set forth an argument regarding causation does not lessen Crescent's burden to show an absence of genuine dispute of material fact as to the element. *Bryant v. Bigelow*, 311 F. Supp. 2d 666, 670 (S.D. Ohio 2004). Here, Crescent has met its burden. Defendants have not set forth any facts to dispute the chain of events relating to the Whitakers's default on the loan, MMS's subsequent actions, MMS's title insurance claim, or Crescent's contractual obligations to MMS. The uncontroverted evidence in the record is more than sufficient to show that but for Defendants alleged negligence in providing an erroneous property description, Crescent would have fared better. Accordingly, the Court will grant Crescent partial summary judgment as to the causation element of its legal malpractice claim.

### 4. *Damages*

Though Crescent has shown that Defendants proximately caused its damages, a genuine dispute exists as to the amount of damages that Crescent incurred. Crescent claims its damages amount to $91,931.30, which is the amount it paid to repurchase the loan. However, Defendants argue that Crescent's actual damages are some lesser amount, because Crescent failed to mitigate its damages by foreclosing and selling the encumbered 8.15-acre parcel. Crescent does not dispute the fact that the loan is secured by the 8.15-acre parcel, and it does not claim to have made any attempt to sell it.

Crescent has failed to meet its burden to show there is no genuine dispute regarding the amount of damages it sustained as a result of Defendants' negligence. Numerous questions of fact regarding damages remain unanswered: does the repurchased mortgage encumber the 8.15-acre parcel? Does Crescent have the ability to foreclose and sell the property? What is the reasonable value of the property? Accordingly, the Court will deny Crescent partial summary judgment as to the issue of damages.

### CONCLUSION

For the reasons stated in this opinion, and otherwise being sufficiently advised, the Court hereby **ORDERS** as follows:

(1) Plaintiff Crescent Mortgage Company's motion for summary judgment [DE 41] is **GRANTED IN PART** and **DENIED IN PART**. The Court **GRANTS** the motion as to the duty, breach, and causation elements of its claim for professional negligence against Defendants. However, the Court **DENIES** the motion as to the amount of damages Plaintiff has sustained as a result of Defendants' negligence;

(2) Defendants Brien Freeman and Freeman & Childers LLP's motion for summary judgment [DE 40] is **DENIED**.

This 31st day of March, 2022.

KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY