UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| **CRESCENT MORTGAGE COMPANY,** | **CIVIL ACTION NO. 6:20-159-KKC** |
| Plaintiff, | |
| v. | **OPINION AND ORDER** |
| **BRIEN FREEMAN and FREEMAN & CHILDERS, LLP,** | |
| Defendants. | |

\*\*\* \*\*\* \*\*\*

This matter is before the Court on a motion (DE 55) filed by Defendants Brien Freeman and Freeman & Childers, LLP to alter or vacate the Court's March 31, 2022 Opinion and Order (the "March 31st Opinion") (DE 49). For the following reasons, the Court denies the motion.

I.  Background

   A.  Underlying Facts[1]

In April 2013, Whitaker Bank agreed to loan $114,000 to Mac and Cindy Whitaker to refinance their existing mortgage on 0.63 acres of residential property located at 126 Casey Road, Corbin, Kentucky. (DE 41-3 ¶ 3.) Whitaker Bank entered this loan arrangement on behalf of its investor, Plaintiff Crescent Mortgage Company. (*Id.*)

To conduct a title examination and prepare a title report for the Whitakers' property at 126 Casey Road, Whitaker Bank retained Defendant Freeman & Childers, a law firm. (Aaron Howard Dep. at 10:14-10:19.) Although Whitaker Bank's title order form did not

---

[1] The majority of these facts are taken from the Court's March 31st Opinion.

1

specify the deed book or page at which the deed for the property was recorded, the address for the property was listed on the form. (DE 40-2.)

In response to the title order, Defendants did not run a title search for the property listed on the order. (Aaron Howard Dep. at 45:6-45:15; DE 40-1 at 3; DE 41-1 at 3; DE 41-6 at 3-4.) Instead, their representative "updated" a title opinion previously prepared for Whitaker Bank, involving a different loan between the bank and the Whitakers on another property. (*Id.*) In November 2012, Whitaker Bank processed another loan for the Whitakers on a different but adjacent property, an 8.15-acre unimproved parcel. (DE 41-3 ¶ 5; DE 41-6 at 3-4; DE 43-2.) Whitaker Bank submitted a title request to Freeman & Childers in November 2012 in connection with the November 2012 loan. (*See* DE 43-2.) The November 2012 title request asked for a "Title Opinion on property in Whitley County per attached deed." (*Id.* at 1.) On the November 2012 title request, "126 Casey Road" was listed as the Whitakers' mailing address. (*Id.* at 1-2.) The deed attached to the November 2012 title request included the legal description of the 8.15-acre property and a reference to the deed book and page numbers for that property. (*Id.* at 2-5.)

Upon receiving the April 2013 title order, Freeman & Childers instead "updated" its November 2012 title opinion and mistakenly incorporated the legal property description for the 8.15-acre parcel into the April 2013 title report rather than the legal property description for 126 Casey Road. (*See* Aaron Howard Dep. at 45:6-45:15; DE 40-1 at 3; DE 40-4 at 1; DE 41-1 at 3; DE 41-3 ¶¶ 4-6; DE 41-6 at 3-4.) Whitaker Bank subsequently entered into a mortgage agreement with the Whitakers. (DE 41-4 at 10.) The mortgage agreement—which was based on the April 2013 title report with the incorrect property description—also contained the incorrect property description from the title report. (*Id.* at 12-13; DE 40-4 at 1; DE 40-6.) Defendant Brien Freeman was the attorney who signed off on the mortgage for

Freeman & Childers. (Brien Freeman Depo. at 27:10-27:16.) Plaintiff then sold the loan to MMS Mortgage Services ("MMS"), who sold it to Freddie Mac. (DE 41-3 ¶ 5.)

The Whitakers later defaulted on the loan on the 126 Casey Road property. (*Id.*; DE 40-9.) When MMS initiated foreclosure proceedings on the property, it learned that the mortgage did not encumber the 126 Casey Road property but the 8.15-acre unimproved property, which was of substantially lesser value. (DE 41-3 ¶ 5.) Upon discovering the error, MMS sought relief from the title insurance company, which denied the claim because the 126 Casey Road property was not described in the insurance policy. (*Id.* ¶ 6; DE 40-11 at 1-2; DE 40-13.) On January 16, 2020, Freddie Mac demanded that MMS repurchase the mortgage because Freddie Mac does not purchase mortgages on unimproved property. (DE 41-3 ¶ 7.) Plaintiff, through MMS, repurchased the loan for $99,380.97 on March 10, 2020. (*Id.*)

  **B.**  **Procedural History**

On July 28, 2020, Plaintiff filed a complaint against Defendants, bringing a claim for professional negligence/legal malpractice. (*See* DE 1.) Parties filed cross-motions for summary judgment. (DE 40; DE 41.) Defendants argued that the statute of limitations barred Plaintiff's action, the Court lacked jurisdiction, and Plaintiff could not establish its legal malpractice claim without expert testimony. (DE 40-1 at 9-17; DE 43 at 11-16.) Plaintiff claimed that it was entitled to summary judgment because no genuine issue of material fact remained as to whether Defendants were liable for legal malpractice. (DE 41-1 at 5-7.)

On March 31, 2022, the Court issued its decision on the parties' cross-motions for summary judgment, denying Defendants' motion and granting in part and denying in part Plaintiff's motion. (DE 49.) In the opinion, the Court held that Plaintiff's claim was timely because the statute of limitations did not begin to run until January 16, 2020, when Freddie Mac demanded MMS repurchase the mortgage and triggered Plaintiff's contractual obligation to repurchase the mortgage. (*Id.* at 9.) The Court also found that it had

3

jurisdiction to consider Plaintiff's claim since the "amount in controversy" requirement was met. (*Id.* at 9-12.) Finally, the Court found that Plaintiff established that no genuine issue of material fact remained as to the breach and causation elements of its legal malpractice claim. (*Id.* at 12-24.) In reaching this finding, the Court concluded that Plaintiff was not required to submit expert testimony to prove its claim. (*Id.* at 17-18.) However, the Court denied summary judgment as to the amount of damages that Plaintiff incurred, leaving that as the sole remaining issue before the Court. (*Id.* at 24-25.)

Defendants now move for reconsideration of the Court's March 31st Opinion. (DE 55.)

## II. Analysis

### A. Standard

Pursuant to Federal Rule of Civil Procedure 59(e), a party must file a motion for reconsideration "no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e). The standard for a motion for reconsideration under Rule 59(e) is "necessarily high." *Hewitt v. W. & S. Fin. Grp. Flexibly Benefits Plan*, CIVIL ACTION NO. 16-120-HRW, 2017 WL 2927472, at *1 (E.D. Ky. July 7, 2017). A Rule 59(e) motion is "extraordinary in nature" and should be only "sparingly granted." *L.C. v. United States*, Case No. 5:21-cv-00124-GFVT, 2022 WL 2814889, at *2 (E.D. Ky. July 18, 2022) (citation and quotation marks omitted). The moving party may not use a Rule 59(e) motion as a tool to "re-litigate issues the Court previously considered." *Hewitt*, 2017 WL 2927472, at *1. A court may only grant a Rule 59(e) motion if the moving party sets forth (1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in the controlling law; or (4) a manifest injustice. *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999) (citations omitted).

### B.     Defendants' Objections

In their motion, Defendants take a scattershot approach in contesting numerous factual findings and legal conclusions in the March 31st Opinion.  Defendants do not argue that their motion is based on newly discovered evidence or an intervening change in the controlling law.  Therefore, their only possible route to relief is to establish that a clear error of law or a manifest injustice occurred.  To establish a clear error of law, the moving party must show that an error was "so egregious that an appellate court could not affirm the district court's judgment." *United States v. Combs*, Criminal Action Nos. 6:04-54-DCR, 7:01-17-DCR, Civil Action No. 6:09-7069-DC, 2012 WL 4460745, at *1 (E.D. Ky. Sept. 26, 2012).  A manifest injustice is "based either legally or factually on a fundamental flaw that[,] without correction[,] would lead to a result that is both inequitable and not in line with applicable policy."  *Hazelrigg v. Kentucky*, Civil Action No. 5:13-cv-148-JMH, 2013 WL 3568305, at *2 (E.D. Ky. July 11, 2013).

The Court will address each objection in turn, as categorized by Defendants.  None of Defendants' challenges necessitates relief from the Court.

#### 1.     Objections to Factual Findings

##### a.     Address and Property Descriptions

First, Defendants object to two statements in the March 31st Opinion: (1) that "the *address*" for the correct property was "clearly included on the form" for the April 2013 title request and (2) that Defendants updated a prior title opinion on "a *different* property" instead of running a title search for "126 Casey Road."  (DE 55-1 at 3 (emphasis in original).)  According to Defendants, the address of "126 Casey Road" generally referred to subdivided property consisting of both the 0.63-acre tract and the 8.15-acre unimproved tract.  Therefore, "it was a rational inference" that the April 2013 title order was for the same property subject to the November 2012 title request.  (*Id.*)  This is incorrect—whether or not those tracts form

5

part of a subdivided property, Defendants present no admissible evidence that "126 Casey Road" was regarded as the address for both tracts. Despite Defendants' characterization otherwise, the November 2012 title request for the 8.15-acre tract requests the title opinion "per attached deed," and "126 Casey Road" is actually listed as the <u>mailing address</u> for the Whitakers. (DE 43-2 at 1-2.) Moreover, Defendants do not explain the relevance of this alleged factual error, nor could it. The March 31st Opinion ultimately depended on the incorrect *property description* in the title report, not the incorrect *address*. Because Defendants cannot demonstrate that an error occurred here, this argument fails.

Relatedly, Defendants dispute the Court's statement that "Defendants do not deny that they included the incorrect property description on their April 2013 title report." (DE 55-1 at 4.) However, at the summary judgment stage, Defendants' denial of a fact is insufficient—they "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). In their summary judgment submissions, Defendants do not provide any evidence that the property description in the April 2013 title report was correct. Instead, they submit evidence from their expert, Darrell Saunders, who merely describes the typical process for conducting title searches and drafting title reports, and the standard of care generally expected of attorneys hired to complete those tasks. (DE 37 at 3; DE 40-10 at 2-4.) For example, in his deposition, Saunders testifies, "If a mortgage is provided and it has that property listed on it, then that's a pretty good indication that's the property that was intended to be the collateral for the loan, which I believe was the instance in this matter." (Darrell Saunders Dep. at 17:10-17:14.) Such conjecture is not affirmative evidence that the April 2013 title report included the correct property description. As the Court already found, Defendants have provided no evidence to show that "126 Casey Road" was the address for the 8.15-acre tract.

6

In contrast, Plaintiff provides several pieces of evidence establishing that the property description in the April 2013 title report was incorrect. (*See* DE 40-4 at 1; DE 41-3 ¶¶ 4-6.) Absent evidence to the contrary, there is no genuine issue of material fact to dispute that the property description in the title report was incorrect. Accordingly, even if the Court made an erroneous statement as to whether Defendants denied that the property description was incorrect, that error would not be so egregious that it leads to an inequitable result or that an appellate court would reverse the Court's decision. Ultimately, without evidence to support their stance, Defendants' denial of this fact is irrelevant. Therefore, the Court cannot grant the motion for reconsideration on this basis.

### b. Previously Litigated Arguments

In objecting to the Court's factual findings, Defendants merely repeat many of the same arguments they already raised in their summary judgment briefings. Such repetitive arguments are:

- Plaintiff's complaint is barred by the statute of limitations. The Court relied on erroneous dates in determining that Plaintiff's complaint was within the statute of limitations and therefore, timely. (*Compare* DE 55-1 at 4-5 *with* DE 40-1 at 6, 14 *and* DE 43 at 6, 21.)

- Defendants did not prepare the note, mortgage, or other closing documents. The Court erred in implying that Defendants were retained to prepare the mortgage and note, and in finding that whoever inserted the incorrect property description in the mortgage was immaterial. (*Compare* DE 55-1 at 5-7 *with* DE 40-1 at 7, 12-17, DE 45 at 3, 5-6, *and* DE 43 at 7, 14, 19-22.)

Because Defendants cannot "re-litigate issues the Court previously considered" on a motion for reconsideration, the Court denies the motion as to these objections. *Hewitt*, 2017 WL 2927472, at *1.

### c. Remaining Factual Objections

Defendants also dispute the Court's use of the phrase "based on" in stating that "*[b]ased on* the Freeman & Childers title report prepared in April 2013, the bank and the Whitakers entered into a mortgage agreement." (DE 55-1 at 5 (citing DE 49 at 2 (emphasis added)).) Defendants do not articulate how, by merely incorporating these words into its opinion, the Court created a manifest injustice or other circumstances justifying relief under Rule 59(e). Accordingly, Defendants' motion is denied on this ground.

Finally, Defendants reiterate that "all evidence [must] be viewed in a light most favorable to them (as non-movants) and with all rational inferences drawn in their favor." (DE 55-1 at 7.) While the Court struggles to see how this constitutes a factual error, Defendants have not provided any indication that the Court failed to properly apply the summary judgment standard in clear error of the law. Indeed, the Court referenced this standard multiple times in analyzing the motions before it. (*See e.g.* DE 49 at 4, 20 ("Thus, even given the most generous reading in the *light most favorable* to Defendants, not only is Saunders's opinion not evidence that Defendants met the applicable standard of care, but it is also actually evidence that they breached it.") (emphasis added)).

Therefore, Defendants have presented no factual errors sufficient to warrant the extraordinarily high remedy they seek. To the extent that Defendants move for reconsideration based on these factual errors, the Court denies their motion.

8

### 2. Objections to Legal Conclusions

#### a. Necessity of Expert Testimony

The majority of Defendants' objections to the Court's legal conclusions relate to one question: Was an expert required to establish the standard of care an attorney is expected to meet in this case? (DE 55-1 at 7-11.) All of Defendants' objections to the Court's conclusion that an expert was unnecessary simply rehash the arguments Defendants already raised (and the Court considered) on summary judgment. (DE 43 at 11-12, 14, 22.) Since Defendants cannot use Rule 59(e) as a vehicle to reargue their prior motions, the Court cannot grant the relief sought. *Hewitt*, 2017 WL 2927472, at *1. Because Defendants' motion "merely quibbles with the Court's decision, the proper recourse is not a motion for reconsideration but instead an appeal to the Sixth Circuit." *Proctor v. GEICO Gen. Ins. Co.*, Case No. 5:17-CV-348-JMHMAS, 2019 WL 1139483, at *2 (E.D. Ky. Mar. 12, 2019) (citation and quotation marks omitted).

And, to the extent that Defendants attempt to advance new legal arguments regarding the necessity of an expert to establish the relevant standard of care in this case, "[p]arties cannot use a motion for reconsideration to raise new legal arguments that could have been raised before a judgment was issued." *Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC*, 477 F.3d 383, 395 (6th Cir. 2007). Therefore, any new arguments are waived, and Defendants' motion also fails on this ground.

Defendants claim that the Court's decision regarding expert testimony was based on the "assumption that a title update and description was done on *wholly unrelated* property having nothing to do with the only identifying information provided . . .[b]ut . . . the 8.15 acre tract was *also* associated with the address of '126 Casey Rd.'" (DE 55-1 at 7-8 (emphasis in original).) As discussed above, Defendants present no admissible evidence that "126 Casey Road" was the address for both tracts. Such an assumption is not clear legal error.

9

### b. Proximate Cause

Next, Defendants disagree with the Court's assertion that "Defendants . . . have not set forth any argument regarding proximate cause." (DE 55-1 at 11.) Defendants then point to the following excerpts from their opposition to Plaintiff's motion for summary judgment: (1) "[T]he Plaintiff has not offered any sufficient proof of the actual legal standard of care applicable to cases such as this . . . and have [sic] offered no competent proof of the other three elements, i.e. breach, causation and damages"; (2) "Expert testimony usually is mandatory to prove negligence" and to "establish a prima facie case"; (3) Plaintiff "therefore has no proof on the standard of care, let alone breach" according to Defendants' expert evidence; (4) Defendants "met or exceeded the standard of care"; and (5) "[T]he subject Mortgage, with allegedly erroneous description, was actually prepared by Lenders." (DE 43 at 7, 10-11, 14-15.)

The Court expresses doubt that these excerpts even concern proximate cause. Construing inferences in Defendants' favor, they only set forth the most bareboned conclusory arguments about proximate cause. "Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (citations, brackets, and quotation marks omitted). While Defendants maintain that "Plaintiffs' argument on causation . . . consisted of two conclusory sentences that Defendants' actions were the proximate cause of their alleged damage," (DE 55-1 at 12), Plaintiff further supported its argument by stating that "[t]he mortgage ultimately contained the wrong property description because Defendants made an incorrect assumption that the property to be mortgaged was one mortgaged by the same borrowers five months earlier" and that "[t]he failure to include the correct property description resulted in damages to [Plaintiff]," (DE 46 at 6).

Most glaringly, Defendants appear to ignore one fact—the mortgage, regardless of who prepared it, copied the incorrect property description from the April 2013 title report, which Defendants were retained to create. That is, the mortgage was drafted based on the inaccurate title report. Defendants undisputedly prepared the April 2013 title report. The property in the April 2013 title report was undisputedly incorrect. If Defendants had not included an incorrect property description in the title report, the incorrect property description would not have appeared in the mortgage. Defendants do not provide any evidence to dispute this causal link. Thus, Defendants have not demonstrated a clear legal error as to causation.

### c. Statute of Limitations

Defendants also criticize the March 31st Opinion for failing to address *Matherly Land Surveying v. Gardner Park*, 230 S.W. 3d 586 (Ky. 2007), where the Kentucky Supreme Court held that "[t]he statute of limitations begins to run as soon as the injury becomes known to the injured" rather than when damages are "an ascertainable sum certain" or when damages are "fixed and nonspeculative." *Id.* at 590-91. In *Matherly*, a party argued that damages did not accrue until they were "fixed and nonspeculative," meaning that "it was known with *absolute certainty* the amount of damages flowing from an incident" and "a specified dollar amount [was] known." *Id.* (emphasis added). The Court rejected this particular construction of "fixed and nonspeculative." *Id.*

However, the March 31st Opinion is entirely consistent with *Matherly*. In determining that the statute of limitations began running in January 2020, the Court did not consider when Plaintiff knew its exact amount of damages. Instead, the Court focused on Plaintiff's *injury*, which was fully realized when Plaintiff "became contractually obligated to repurchase the mortgage from Freddie Mac" in January 2020. (DE 49 at 8.) The Court also cited law

11

consistent with *Matherly*, recognizing that a claim can accrue even if the plaintiff "'may not have known the full extent of his damages in terms of the precise dollar amount'" and that the key factor is when the "'plaintiff is certain that damages will indeed flow from defendant's negligent act.'" (*Id.* at 7-8 (quoting *Saalwaechter v. Carroll*, 525 S.W.3d 100, 106-07 (Ky. Ct. App. 2017)).) Therefore, Defendants have not shown that the Court committed a clear legal error by not addressing *Matherly*, and the Court will not grant Defendants' motion as to this issue.

### d. Damages

Finally, Defendants ask the Court to submit allocation of fault to the jury as to damages because Kentucky is a comparative negligence state. (DE 55-1 at 12-13.) This question is not properly before the Court. None of the Court's findings in the March 31st Opinion related to the allocation of fault, nor did Defendants ever mention the issue on summary judgment. Moreover, "[f]ault may not be properly allocated to a party . . . unless the court or the jury first finds that the party was at fault; otherwise, the party has no fault to allocate." *McDonald's Corp. v. Ogborn*, 309 S.W.3d 274, 296 (Ky. Ct. App. 2009) (citation and quotation marks omitted). Because the Court has not determined that Plaintiff was at fault, the Court cannot allocate fault to Plaintiff. Therefore, the Court denies Defendants' request.

To the extent that Defendants move for reconsideration based on these legal errors, the Court denies their motion.

## III. Conclusion

Accordingly, the Court hereby ORDERS that Defendants' motion to alter or vacate the Court's March 31, 2022 Opinion and Order (DE 55) is DENIED. This matter IS SET for

12

a Telephonic Status Conference on MONDAY, APRIL 3, 2023 at 1:00 p.m. at Lexington, Kentucky. The Court will enter a separate Order with call information to counsel of record.

This 27th day of March, 2023.

KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY